USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 8, 2017

**MEMO ENDORSED**



**Grant & Eisenhofer P.A.**

485 Lexington Avenue
New York, NY  10017
Tel: 646-722-8500
Fax: 646-722-8501

123 Justison Street  Wilmington, DE 19801  Tel: 302-622-7000  Fax: 302-622-7100

30 N. LaSalle Street, Suite 2350
Chicago, IL  60602
Tel: 312-214-0000
Fax: 312-214-0001

ROBERT G. EISLER
DIRECTOR
Tel: (646) 722-8500
Email:  reisler@gelaw.com

November 27, 2017

**VIA ECF AND ELECTRONIC MAIL**

The Honorable Katherine Polk Failla
United States District Judge
U.S. District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

Re:    *Gordon, et al. v. Amadeus IT Group, S.A. et al.*, No. 1:15-cv-05457 (KPF)

Dear Judge Failla:

Following protracted discussions with Sabre regarding its 106,000-entry privilege log, Plaintiffs now bring a motion to compel Sabre to produce communications with Amadeus concerning the content backup agreement. That agreement is central to Plaintiffs' conspiracy claims. Indeed, it was the "first step in Defendants' scheme," in which "Amadeus and Sabre promised to supply each other with any content that airlines provided to only one of them." ECF 170 at p. 5. The purpose of the agreement "was to make sure the GDSs stood as one against the Airlines.'" *Id.*

Ordinarily, the disclosure of privileged material to a third party results in waiver of the privilege. *See Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015). This motion involves three documents where Sabre and Amadeus disclosed legal advice to each other concerning the content backup agreement.[1] Each of the communications occurred well before the execution of the content backup agreement. But Sabre asserts that the common interest doctrine applies because they were prepared in anticipation of litigation and to "ensure compliance with the antitrust laws."[2]

---

[1] First, Sabre has redacted part of an April 10, 2005 email sent from David Schwarte, G.C. for Sabre, to Tomas Lopez, G.C. for Amadeus, which discloses information received from Sabre's outside counsel, Joseph Kattan. *See* Ex. A (SBR-50006986) and Ex. B (SBR-50006988). Second, Sabre has redacted parts of an October 19, 2005 email sent from Marcos Araujo, outside counsel for Amadeus, to Mr. Kattan. Mr. Kattan forwarded that email to Mr. Schwarte, adding his own statements (which are redacted). *See* Ex. C (SBR-50006973). Third, the October 19 email attached a "draft briefing paper" purportedly related to compliance with the antitrust laws. *See* Ex. D (SBR-50006982); *see also* Ex. E at p. 2 (Nov. 21 S. Kaiser Letter).

[2] *See* Ex. E at p. 2 (Nov. 21 S. Kaiser Letter); *see also* Ex. F at p. 5 (Oct. 21 S. Kaiser Letter).

The Honorable Katherine Polk Failla
November 27, 2017
Page 2

Plaintiffs bring this motion because the common interest doctrine does not extend to commercial matters such as the content backup agreement.[3] There is no showing that Amadeus and Sabre (1) coordinated a legal strategy, particularly as of April or October 2005, or (2) that they shared a common legal, as opposed to a commercial, interest. Plaintiffs ask that the Court issue an order compelling Sabre to produce these communications and any others similarly withheld.

**The Common Interest Doctrine Does Not Apply to the Content Backup Agreement**

Although disclosure of privileged matter to a third party generally results in waiver, *Schaeffler*, 806 F.3d at 40, these disclosures remain privileged "where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel . . . ." In order to prevent disclosure, one must show that (1) the communications were made "in the course of an ongoing common enterprise," and (2) the parties "share a common interest about a legal matter." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). The common interest doctrine applies only to communications between parties that have a common legal, as opposed to a commercial, interest. *See Schaeffler*, 806 F.3d at 40-41; *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 471 (S.D.N.Y. 2003). "The burden of establishing the attorney-client privilege, in all its elements, always rests upon the person asserting it." *Schwimmer*, 892 F.2d at 244. And, "[l]ike all privileges, the common interest rule is narrowly construed." *Gulf Islands*, 215 F.R.D. at 471 (citing *United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999)).

Sabre's common interest claim fails. First, Sabre has not shown the existence of a joint defense agreement or that the communications at issue were part of a joint legal strategy. For example, in the April 2005 email, Sabre "convey[ed]" legal advice to Amadeus in connection with the negotiation of the content backup agreement. *See* Ex. E at p. 1-2; Ex. F at p. 5. Merely discussing legal advice—rather than reaching a joint legal strategy—is insufficient.[4]

Further, it does not appear that Amadeus and Sabre could have agreed to a coordinated legal strategy as of the time of the disputed communications **because they occurred well before the content backup agreement was executed**.[5] Preventing disclosure of communications before a

---

[3] On November 17, my colleague and Plaintiffs' co-counsel Ryan McEwan, spoke on the telephone with Steven Kaiser, counsel for Sabre to discuss this matter. During that call and in a subsequent letter (*see* Ex. E), Mr. Kaiser indicated that Sabre would produce some—but not all—of the challenged materials.

Sabre has also raised the issue of timeliness. But discovery does not close until December 29, 2017 (ECF 212), and the Court has not set a deadline to bring motions before then. Moreover, analyzing Sabre's 106,000-entry log has been arduous and time-consuming. Rather than bring disputes prematurely, the parties engaged in protracted discussions beginning in August. That process was efficient and productive, as the parties narrowed the disputes to one.

[4] *Gulf Islands*, 215 F.R.D. at 471 (claim of a coordinated legal strategy failed where attorney "testified only that he *discussed* legal strategy"); *see also UFCW 1776 v. Teikoku Pharma USA*, 2016 U.S. Dist. LEXIS 141185, at *47-51 (N.D. Cal. Oct. 11, 2016) (no common interest where parties failed to provide evidence of agreement prior to communications); *Microsoft Corp. v. Acacia Research Corp.*, 2014 WL 6450254, at *2-3 (S.D.N.Y. Nov. 17, 2014); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 448 (S.D.N.Y. 1995) ("no evidence that they formulated a joint legal strategy to deal with the possibility" of a shareholder litigation).

[5] Amadeus and Sabre executed the content backup agreement in March 2006. S*ee* Ex. G (SBR-23325098). **The disputed communications occurred well before**. *See* Exs. A and B (redacted email dated April 10, 2005); Exs. C and

The Honorable Katherine Polk Failla
November 27, 2017
Page 3

mutual understanding would be a significant extension of the common interest doctrine, and inconsistent with Second Circuit Law. "Only those communications made in the course of an **ongoing** common enterprise and intended to further the enterprise are protected." *Schaeffler*, 806 F.2d at 243 (emphasis added). Communications made **before** an agreement on common strategy are not privileged. *See Microsoft, 2014 WL 6450254, at *6* ("[A] common legal interest could only exist after . . . the parties' agreement took effect . . . .").[6] In *Schaeffler*, the common interest did not arise until a tender offer was made and the parties were "locked into" the loan and offering price. 806 F.3d at 41. The communications here were **months before** the agreement was reached. There is no evidence the parties were "locked in" at the time. In fact, they were negotiating the agreement that purportedly created the common interest in the first place.

Moreover, the record shows at most that **Amadeus and Sabre shared a commercial interest**, not a legal interest. They entered the content backup agreement while negotiating new contracts with the airlines. ECF 106 at ¶ 19. The purpose was to prevent airlines from forcing one GDS to compete against another for content. *Id.* ¶ 20. The commercial—rather than legal—nature of this arrangement is demonstrated by Defendants' own characterization: the attachment to one of the contested emails describes ███████████████████████████████████████████████ ███████████████████████████████" *See* Ex. H (SBR-50006987) (emphasis added).

Sabre's only explanation for its withholding—that the parties identified the possibility of a lawsuit—does not transform their commercial interest into a legal one. Sabre may not shield communications because it feared litigation arising from the as yet unsigned anticompetitive agreement it was negotiating. The common interest doctrine does not "encompass a joint business strategy which happens to include as one of its elements a concern about litigation." *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 259 F.R.D. 64, 71 (S.D.N.Y. 2009) (citation omitted).[7] In fact, the communications at issue occurred between horizontal competitors who were in the midst of coordinating a strategy to eliminate competition for the business of shared customers.[8]

## Conclusion

We stand ready to address any of the foregoing with the Court at its convenience.

---

D (email and attachment sent October 19, 2005). Indeed, for Exhibits A and B, Sabre admits the content backup agreement "at that point was a potential agreement." *See* Ex. E at p. 1-2.

[6] *See also In re FTC,* 2001 WL 396522, at *9 (S.D.N.Y. Apr. 19, 2001); *SEC v. Wyly*, 2011 WL 3055396, at *2-3 (S.D.N.Y. Jul. 18, 2011).

[7] *See also Microsoft*, 2014 WL 6450254, at *5-8 (no common legal interest concerning patent licensing or litigation); *Gulf Islands*, 215 F.R.D. at 471 ("[C]ommunications regarding business matters—even where litigation is pending or imminent—do not qualify for protection from discovery."); *In re FTC*, 2001 WL 396522, at *5 (despite mutual concerns "about the consequences of failing to comply with applicable law and regulations," the communications were not protected because the "benefit [of the legal advice] was ancillary to the business relationship"); *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 19 (E.D.N.Y. 1996) (no common legal interest despite sharing "a concern about litigation" and "developing a business strategy one of whose components was to avoid litigation").

[8] To the extent that Amadeus has also withheld such communications, it too should be required to produce them. Amadeus has refused to produce a privilege log for their productions from prior litigation. Plaintiffs therefore have no way of knowing whether Amadeus has asserted a common interest regarding this (or any other) subject.

The Honorable Katherine Polk Failla
November 27, 2017
Page 4

Respectfully,

Robert G. Eisler (Bar #RE1398)
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, New York
Tel: (646) 722-8500
Fax: (646) 722-8501

cc:     All Counsel of Record (via ECF)

Application DENIED.  Having reviewed the parties' submissions
and, *in camera*, the materials Plaintiffs seek to discover, the
Court is satisfied that these documents fall within the
attorney-client privilege.

Dated: December 8, 2017          SO ORDERED.
       New York, New York

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE